SARAH L. WOODSON (SBN 257954)
swoodson@pmiplaw.com
PEQUIGNOT + MYERS LLC
90 NORTH COAST HIGHWAY 101
SUITE 315
ENCINITAS, CALIFORNIA 92024
PHONE: 415-722-3518
FACSIMILE: 202-328-2219

Attorney for Defendant/Counterclaimant,
Incstores LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## THE SOUTHERN DIVISION

| | |
|---|---|
| The Parallax Group International, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>Incstores LLC, an Arizona Limited Liability Company,<br><br>Defendant. | Case No. 8:16-cv-929-AG-DFM<br><br>**INCSTORES' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FOURTH COUNTERCLAIM AND MOTION TO STRIKE THE SEVENTH AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT**<br><br>Judge: Hon. Andrew J. Guilford |
| Incstores LLC, an Arizona Limited Liability Company,<br><br>Counterclaimant,<br><br>v.<br><br>The Parallax Group International, LLC, a California Limited Liability Company, et al.<br><br>Counterdefendants. | **Hearing Date:** June 19, 2017<br><br>**Hearing Time:** 10:00 a.m.<br><br>**Trial Date:** October 31, 2017 |

# TABLE OF CONTENTS

**I. INTRODUCTION** ................................................................................................ **1**

**II. LEGAL STANDARD** ...................................................................................... **6**

**III. ARGUMENT** ...................................................................................................... **8**

**A.   Incstores Has Pleaded a Substantial Amount of Facts and Has Made the Required Showing of Particularity under Rule 9(b) and Exergen to At  Least Plausibly Show that Parallax Withheld Material Prior Art and  Prior Art Rejections in the '182 Application from the Examiner of the '232 Application (the '085 Patent), and Also Materially Misrepresented  the State of the Prior Art, With an Intent to Deceive the Patent Office** ............................................... **8**

**B.   Incstores Has Pleaded a Substantial Amount of Facts and Has Made the Required Showing of Particularity under Rule 9(b) and Exergen to At Least Plausibly Show that Parallax Withheld Material Prior Art and  Prior Art Rejections in the '182 Application from the Examiner of the '764 Patent, With an Intent to Deceive the Patent Office** .......................................................................... **17**

**C.   Parallax's Failure to Memorialize Interviews with the Examiner is Yet Another Reason Incstores Has Made a Plausible Showing of Parallax's Inequitable Conduct** ...................................................................................... **21**

**D.   Incstores Should Be Allowed to Amend the Counterclaim (and  Affirmative Defense) if the Court for Some Reason Grants Parallax's  Motions to Dismiss and Strike** ...................................................................................................... **22**

**IV. CONCLUSION** ............................................................................................ **22**

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Akron Polymer Container Corp. v. Exxel Container, Inc.*,
148 F.3d 1380, 1385 (Fed. Cir. 1998) ........................................................... 8

4

*Apotex Inc. v. UCB, Inc.* 763 F.3d 1354, 1359 (Fed. Cir. 2014) ................................ 20

5

*Armour & Co. v. Swift & Co.* ..................................................................... 11

6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ........................................... 6

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................... 6, 17

8

*Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007).............. 20

9

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
910 F.2d 804, 808–12 (Fed. Cir. 1990).......................................................... 8

10

11

*Dayco Products, Inc. v. Total Containment, Inc.*,
329 F.3d 1358, 1368 (Fed. Cir. 2003) ......................................................... 9, 13

12

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).................... 7

13

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).................................... 6

14

*Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*,
559 F.3d 1317, 1340 (Fed. Cir. 2009) ......................................................... 8

15

16

*LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) ................ 6

17

*Li Second Family Limited v. Toshiba*,
231 F.3d 1373, 1381 (Fed. Cir. 2000) ......................................................11, 12, 13, 21

18

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*,
487 F.3d 897 (Fed. Cir. 2007) ............................................................... 10, 12

19

20

*Pregis Corp. v. Kappos*, 700 F.3d 1348, 1353 (Fed. Cir. 2012)................................ 10

21

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
536 F.3d 1247, 1255 (Fed. Cir. 2008) ......................................................... 10

22

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357, 1366 (Fed. Cir. 2008) ......................................................... 7

23

24

*Therasense Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276, 1292 (Fed. Cir. 2011) ................................................7, 8, 9, 18, 19, 20

25

26

*Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)................................ 6

27

28

**Statutes**

37 C.F.R. § 1.2 .................................................................................................. 21

37 C.F.R. § 1.56(a) ........................................................................................... 18

1    Counsel for Defendant, Incstores LLC ("Incstores"), submits this Opposition to

2    the Motions to Dismiss and Strike by The Parallax Group International, LLC

3    ("Parallax") entitled PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S

4    FOURTH COUNTERCLAIM AND MOTION TO STRIKE THE SEVENTH

5    AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT, filed on April 14, 2017

6    (Dkt. No. 72-1).

## I.  INTRODUCTION

9    Parallax's motion to dismiss Incstores' allegations of inequitable conduct omits

10   the discussion of many of Incstores' pleaded facts and entirely ignores the central focus

11   of Incstores' allegations. Incstores adequately pleaded the who, what, when, where, and

12   how to meet the standards of FRCP 9b. Therefore, Parallax's motion to dismiss

13   Incstores' counterclaims should be denied.[1]

14   As pleaded by Incstores, Parallax's first attempt to obtain patent protection for

15   reversible interlocking foam mats with undulations was with U.S. Patent Appl. No.

16   11/105,182 filed on April 13, 2005 ("the '182 application). [Incstores' Fourth

17   Counterclaim, for "Unenforceability of the '085 and '764 Patents Based on Inequitable

18   Conduct" (hereafter "4th CC"), para 50][2] This application did not meet with success,

19   and, in fact, has been consistently rejected for more than 9 years of pendency. [4th CC,

20   para 52]

21   Faced with the failure of the '182 patent application, Parallax next filed U.S.

22   Patent Appl. No. 14/630,232 ("the 232 application"), on February 24, 2015. (4th CC,

23   para 51, 55). U.S. Patent No. 9,289,085 ("the '085 patent") issued from the '232

---

[1] Although Parallax's motion states that Incstores did not file its amended counterclaims after being granted leave, this is incorrect. Incstores filed its amended counterclaims on March 31, 2017, as Dkt. No. 58. The counterclaims reflected at Dkt. Nos. 56 and 58 are believed to be the same, however, and Parallax's error does not impact the merits of this motion.

[2] All citations herein to Incstores' Fourth Counterclaim also apply to Incstores' Seventh Affirmative Defense, which incorporated all of the allegations of the Fourth Counterclaim.

1

application, on March 22, 2016. [4th CC, para 50] Parallax did not file a "normal" application, however. It filed the '232 application under the Patent Prosecution Highway ("PPH") program, which was a "pilot" program designed to allow patent applications to obtain expedited examination based upon the grant of patent applications in certain foreign countries. [4th CC, para 55]

The net effect of a PPH application is that the program calls for the examiner to focus on the result of the foreign application (in lieu of a conventional search and prosecution). See, https://www.uspto.gov/patents/law/notices/global-ip5.pdf "[T]he PPH promotes patent application processing efficiency by allowing the examiner in the office of later examination (OLE) to **reuse the search and examination results from the office of earlier examination (OEE)**, thereby reducing workload and duplication of effort." (emphasis added). Put another way, faced with the failure of the '182 application, Parallax filed a PPH application with the net effect of focusing the (different) examiner on the irrelevant art cited in the foreign patent application.[3] [4th CC, paras 55, 56] The PPH program does not absolve users of the duty of disclosure, however, and Parallax failed to disclose "other information" known by Parallax to be material, as alleged in Incstores' pleadings. *Id.* ("The Global/IP5 PPH pilot program does not absolve applicants of all their duties under 37 CFR 1.56 and 37 CFR 11.18. [] **The applicant still has a duty of candor and good faith, including providing to the USPTO other information known to be material to patentability**." (emphasis added)) In other words, this is not the end of the story.

Specifically, during prosecution of U.S. Patent No. 9,289,085 ("the '085 patent"), counsel Joe Andelin argued that "reversibility" in floor mats was not taught in the prior

---

[3] The foreign application based upon which Parallax filed its PPH application contained no record of the material prior art which was discovered and relied upon by the different patent examiner to reject the '182 application over and over for 9 years.

art.[4] [4th CC, para 78] In direct response to these arguments, the Patent Office subsequently allowed U.S. Patent Application No. 14/630,232 ("the '232 application") to issue as the '085 patent. *Id*. At the time Mr. Andelin made such arguments, the only prior art reference being considered by the Patent Office was the Bowers reference, which is wholly unrelated to reversible, interlocking floor mats. *Id*.; *See also* Notice of Allowance issued in the '232 application, dated January 21, 2016, pages 2-3 ("Reasons for Allowance" including that Bowers was "the closest prior art" and "fails to teach a reversible floor matting . . . .") [Electronic copy of '232 file history containing the parties' joint designations for claim construction, submitted on May 8, 2017]

Although the '085 patent was granted in response to arguments that "reversibility" was not taught in the prior art, Parallax and its counsel knew of prior art references which teach reversibility in foam floor mats. Proof of this may be found in the prosecution history of the '182 application, to which the '232 application claims priority.[5] Specifically, as Incstores has pleaded, Parallax submitted an Information Disclosure Statement in the '182 application which appears, at first blush, to disclose a reference which Incstores now refers to as "the MyKarateStore.com reference". [4th CC, para 67] The Mykaratestore.com reference teaches dual color, reversible floor mats as is evident from Incstores' pleadings (which include images from the reference) and as apparently conceded by Parallax in its motion. [4th CC, para 71, 73; Motion to Dismiss ("MTD") at 12-13]

In other words, Parallax's inclusion of the MyKarateStore.com reference in an IDS filing in the '182 patent application proves, conclusively, that Parallax was aware

---

[4] Incstores initially offered to omit counsel's name from these allegations. However, Parallax counsel insisted (during several pre-motion conferences) that counsels' names be added to meet the "who" requirement of Federal Rule 9(b).

[5] Mr. Andelin was well-aware of the prior art and rejections in the '182 application, since he was an attorney of record for the '182 application. *See*, e.g., Appellant's Reply Brief filed in the '182 application, dated March 28, 2014 (signed by Mr. Andelin). [Electronic copy of '182 file history containing the parties' joint designations for claim construction, submitted on May 8, 2017]

of and in possession of the reference. However, even though the MyKarateStore.com reference discloses "reversibility" in foam floor mats, and thus was clearly material to Mr. Andelin's arguments that "reversibility" was not taught in the prior art, Mr. Andelin did not disclose this reference to the USPTO with an IDS (or in any other fashion) in the '232 application. [4th CC, para 74]

Faced with these facts, Parallax argues that because the MyKarateStore.com reference was "disclosed" in the '182 patent application, it did not have a duty to separately disclose the MyKarateStore.com reference in the '232 patent application. [MTD at 8-9, 10] Parallax also argues in its motion that the Patent Office could have read the text of the MyKarateStore.com reference in lieu of interpreting images in the reference. However, both of these arguments fail for one very simple reason.

After Parallax filed the IDS disclosing the MyKarateStore.com reference, the Patent Office issued an Office Action on May 17, 2006 indicating that the disclosure failed to comply with 37 C.F.R. 1.98(a)(2), "which requires a legible copy" of each non-patent reference submitted. (underlining in original) That is, as Incstores has pleaded in detail, the copy of the MyKarateStore.com reference that Parallax disclosed to the Patent Office was so poor, that it was illegible to the Patent Office. [4th CC, para 67-69, 72-74] Compounding matters, Parallax disclosed the identity and location of the references using "broken" weblinks (normally useful for accessing the web-based reference) so that the Patent Office could not access legible copies of the actual publications. [4th CC, para 67, 68] Consequently, according to the USPTO, the prior art submitted with the IDS *was not considered.* [4th CC, para 69] Moreover, according to the Patent Office, the PTOL-1449 form on which the prior art was listed was also illegible and not considered. According to the USPTO, the poor quality resulting from the faxing of the references rendered them illegible. [4th CC, para 69] In other words, the Patent Office simply did not consider the MyKarateStore.com reference *at all*. To address the illegibility issue, the May 17, 2006 Office Action requested that Parallax submit new copies of the reference. [4th CC, para 69, 70]

In response to the May 17th Office Action, Parallax filed a replacement IDS on July 6, 2006. [Electronic copy of '182 file history containing the parties' joint designations for claim construction, submitted on May 8, 2017] However, the replacement IDS filed by Parallax omitted all disclosure of the material MyKarateStore.com reference. [4th CC, para 70]

As a recap, Parallax first filed illegible copies of the material MyKarateStore.com reference accompanied by "broken" weblinks in what appears to be a deliberate act intended to prevent the Patent Office from being able to access them. [4th CC, 67-68] Then, *when requested by the Patent Office* to submit legible copies of the reference, Parallax responded by providing new copies of the irrelevant references *but* while omitting the disclosure of the material MyKarateStore.com reference. [4th CC, para 70] Consequently, Parallax's arguments that it did not need to disclose the MyKarateStore.com reference in the '232 application, because it was "disclosed" in the '182 application, must fail. The reference was not considered in the '182 patent application, therefore Parallax's arguments pertaining to MPEP 609.02 (pertaining to reliance of the disclosure of a reference in a "parent" application) simply do not apply. The combination of these acts, as pleaded by Incstores, is sufficient, by itself, to support a plausible inference that Parallax withheld these references both with knowledge and with purpose.

Although Parallax puzzlingly also alleges that Incstores has not identified a patent claim to which the MyKarateStore.com is relevant, or pleaded why or how the reference is material, a simple reading of Incstores' counterclaim demonstrates that this is simply not true. [4th CC, paras 57-61, 64-65, 71, 72, 78 (reading, in part, "[C]laim 1 of the '085 patent claims the reversible and dual color features. Thus, it is material that the original photos of the 'reversible puzzle mats' contained in one of the MyKarateStore.com references conspicuously and unmistakably depict dual color, reversible floor mats.")]

Incstores' pleadings discuss the elements of Claim 1 in detail, and also discuss

the prosecution history of the '085 patent where Mr. Andelin argued the absence of reversibility in the prior art. [*Id.*] Further supporting the materiality prong, Incstores's pleadings also offer a comparison of the The MyKarateStore.com reference to the EVAHWCG reference (they are nearly identical), in view of which reexamination of claim 1 of the '085 patent was granted by the USPTO on February 3, 2017. [4[th] CC, paras 76, 77, including photographs]

Parallax's motion ignores or mischaracterizes many other supporting facts, or misapplies the law, as addressed in further detail below (along with the facts pertaining to withholding material art during prosecution of the Patent No. D543,764).

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). In considering the motion to dismiss, the Court must accept all factual allegations of the complaint as true and construe those facts, as well as the inferences from those facts, in the light most favorable to plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

A court may strike an affirmative defense if it is insufficient or is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). An affirmative defense must give the plaintiff fair notice of the defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Motions to strike are disfavored and are "generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

The elements for pleading inequitable conduct were set forth in *Exergen Corp. v.*

6

*Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), including that it must be pled with "particularity" under FRCP 9(b), which requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. *Exergen*, 575 F.3d at 1326-27. Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." The relevant "conditions of mind" for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1327. Although "knowledge" and "intent" may be averred generally, the pleadings must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind. *Id.*

As a general rule, inequitable conduct applies in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim. *Therasense Inc. v. Becton*, *Dickinson and Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) (although inequitable to strike down an entire patent where the patentee committed only minor missteps or acted with minimal culpability, it is also inequitable "to permit a patentee who obtained his patent through deliberate misrepresentations or omissions of material information to enforce the patent against others")).

The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). In the case of nondisclosure of information, a specific intent to deceive the PTO means that the applicant made a deliberate decision to withhold a known material reference; that is, the applicant knew of the reference, knew that it was

material, and made a deliberate decision to withhold it. *Therasense*, 649 F.3d at 1290. Importantly, because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. *Id.* (citing *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009)). "The intent element of the offense is ... in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *Larson Mfg.*, 559 F.3d at 1327 (quoting *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1385 (Fed. Cir. 1998)).

The taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family. *Therasense*, 649 F.3d at 1288-89 (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808–12 (Fed. Cir. 1990)).

## III.  ARGUMENT

**A.    Incstores Has Pleaded a Substantial Amount of Facts and Has Made the Required Showing of Particularity under Rule 9(b) and Exergen to At Least Plausibly Show that Parallax Withheld Material Prior Art and Prior Art Rejections in the '182 Application from the Examiner of the '232 Application (the '085 Patent), and Also Materially Misrepresented  the State of the Prior Art, With an Intent to Deceive the Patent Office**

Attempting to discredit Incstores' Fourth Counterclaim, Parallax alleges that Incstores failed to plausibly demonstrate that an identified person "knew" of material information and withheld the information "deliberately". [Motion to Dismiss ("MTD") at 7] According to Parallax, it disclosed the Mykaratestores.com reference in the co-pending '182 patent application. [MTD at 8-9, 10] Parallax argues that this is enough. It is otherwise undisputed that Parallax did not disclose the reference in the '232 application itself.

First, the Mykaratestores.com reference discussed in the introduction above *was not properly disclosed in the '182 application at all*. The prosecution history

8

demonstrates, as Incstores has pleaded, that Parallax submitted illegible copies of the references. [4th CC, paras 67-69, 72-74] Then, when requested by the Patent Office to disclose legible copies, Parallax re-submitted *all but the material Mykaratestores.com reference* in a new IDS. [4th CC, para 70] Therefore, Parallax's citation to MPEP 609.02 is irrelevant with respect to these references. Parallax's failure to disclose these material references to the Patent Office *after being expressly requested to do so* is, by itself, a sufficient factual basis to infer intent to deceive (which carries over to the '232 application, *or*, at least, supports Incstores' allegation that Parallax failed in its duty of disclosure in the '232 application). Having failed to submit legible copies in the '182 application (as requested by the USPTO), it was simply not possible for the examiner of the '232 application to find and rely upon them (notwithstanding that the '232 examiner was unaware of the '182 application). And, instructively, if the Mykaratestores.com reference was properly before the '232 application examiner, Parallax could not have succeeded in arguing that reversibility in foam mats was not taught in the prior art. Since the '232 application was permitted to issue (as the '085 patent) based upon this argument, this makes the nondisclosure of the Mykaratestores.com reference "but for" material. *Therasense*, 649 F.3d at 1291 (prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.).

In addition to omitting disclosure of the Mykaratestores.com reference to the examiner during prosecution of the '232 application, Parallax also failed to disclose more than nine years of adverse decisions (and the underlying prior art), all consistently rejecting the '182 application's claims. [4th CC, para 64-65 and Exhibit 1 thereto (as cited in para 66)] As pleaded by Incstores, the '182 application claims mirrored the claims of the '232 patent application; therefore, any prior art or adverse decision in the '182 application was unequivocally relevant to the patentability of the '232 application (and hence the '085 patent). [4th CC, paras 57-61, 64-65] *See Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) (holding that a contrary

INCSTORES' OPPOSITION TO PARALLAX'S MOTION TO DISMISS AND STRIKE

1   decision of another examiner reviewing a *substantially similar* claim was material).

2       However, like its arguments with respect to the Mykaratestores.com reference,

3   Parallax's motion argues that it is absolved of its duty of disclosure in the '232

4   application by MPEP § 609.02. [MTD at 8-9] According to Parallax, because the

5   adverse decisions and cited art were available in the '182 patent application, Parallax

6   claims that it had *no duty* to disclose them to the (different) examiner of the '232 patent

7   application. [MTD at 8]

8       Parallax's reliance on § 609.02 is misplaced, however.[6] First, the Manual of

9   Patent Examining Procedure ("MPEP") is not law. It is merely a guide which attempts

10  to interpret statutes and regulations for USPTO practitioners and examiners. *Molins*

11  *PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995). Thus, Parallax's conduct

12  should be evaluated under Federal Circuit law. *Pregis Corp. v. Kappos*, 700 F.3d 1348,

13  1353 (Fed. Cir. 2012) (Federal Circuit law applies to "issues of substantive patent law

14  and certain procedural issues pertaining to patent law.") (quoting *Research Corp.*

15  *Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008)). According to

16  the Federal Circuit, it is indeed required to disclose adverse decisions to an examiner

17  which issued in a different but related application. For example, in *McKesson*

18  *Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897 (Fed. Cir. 2007), the

19  Federal Circuit affirmed a finding of inequitable conduct where "the examiner of one

20  application [] was not apprised of the adverse decisions by another examiner [] in a

21  closely-related application." *Id.* at 924. More specifically, during prosecution, the

22  applicant disclosed "prior art cited in that application, but failed to mention the adverse

23  decisions." *Id.* Moreover, the "applicant made statements to the examiner inconsistent

24  with the other examiner's decisions, *i.e.,* that nothing in the prior art disclosed three-

25  node communication." *Id.*

26  _____

27      [6] Parallax characterizes the arguments pertaining to MPEP § 609.02 as related to the
    issue of materiality and the concept of cumulative art, neither of which appear to be relevant
    to the MPEP section cited. Regardless, Incstores has done its best to address the arguments
28  made.

INCSTORES' OPPOSITION TO PARALLAX'S MOTION TO DISMISS AND STRIKE

Instructively, the patent applicant in the *McKesson* case was more forthcoming than Parallax. It not only disclosed the co-pending application but also disclosed the art cited within that application. Yet, the applicant was found to have committed inequitable conduct for failing to bring the adverse decisions to the attention of the second examiner, and for making statements during prosecution which were inconsistent with the teachings of the art. *Id*. This is exactly like the case before the Court, *except that Parallax is more culpable*. Again, Parallax never brought the '182 case to the attention of the '232 application examiner, and it made (successful) arguments alleging lack of reversibility in the art, while withholding disclosure of references teaching reversibility from the '232 examiner. [4th CC, paras 62-65, 74, 78]; *See also Li Second Family Limited v. Toshiba*, 231 F.3d 1373, 1381 (Fed. Cir. 2000) (affirming inequitable conduct based on an applicant withholding disclosure in a second patent application of an adverse decision previously issued in a related, but failed, first application, resulting in grant of the second application).

Second, Parallax's arguments ignore the more specific section of the MPEP addressing a patent applicant's duty of disclosure. According to MPEP 2001.06(b)[7], "[t]he examiner **must** indicate in the first Office action whether the prior art in a related earlier application has been reviewed." (emphasis added) If the examiner has not indicated awareness of the prior art in the related application, the patent applicant is not absolved of the duty to disclose such art. The MPEP makes this abundantly clear, by explaining a patent applicant's Rule 56 duty of disclosure (pertaining to co-pending applications) with its quotation of the 7th Circuit in *Armour & Co. v. Swift & Co.*:

> [W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application... [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent.

---

[7] Section 2001 is aptly titled, "DUTY OF DISCLOSURE, CANDOR, AND GOOD FAITH"

Making this even more clear, MPEP § 2001.06(b) cross cites to MPEP § 2004, paragraph 9 (entitled AIDS TO COMPLIANCE WITH DUTY OF DISCLOSURE) which reads:

> **Do not rely on the examiner of a particular application to be aware of other applications belonging to the same applicant or assignee.** It is desirable to call such applications to the attention of the examiner even if there is only a question that they might be "material to patentability" of the application the examiner is considering. See Dayco Prod., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1365-69, 66 USPQ2d 1801, 1806-08 (Fed. Cir. 2003) (contrary decision of another examiner reviewing substantially similar claims is 'material'; copending application may be 'material' even though it cannot result in a shorter patent term, when it could affect the rights of the patentee to assign the issued patents). It is desirable to be particularly careful that prior art or other information in one application is cited to the examiner in other applications to which it would be material. **Do not assume that an examiner will necessarily remember, when examining a particular application, other applications which the examiner is examining, or has examined. A "lapse on the part of the examiner does not excuse the applicant."** KangaROOS U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1576, 228 USPQ 32, 35 (Fed. Cir. 1985); see also MPEP § 2001.06(b). (emphasis added)

In this case, Incstores has pleaded that the examiner of the '232 application was not notified of the '182 application. [4th CC, paras 62-65, 74 ("[T]he examiner of the '232 application did not indicate in the record that he was aware of the '182 patent application at all, let alone the rejections or art contained therein.")] Parallax does not dispute this. Instead it simply argues that it had no duty. [MTD at 10] Given that the examiner made no notation in the '232 patent application record of his awareness of the '182 patent application (as required by MPEP § 2001.06(b)), and given that the examiner of the '232 application only cited to prior art much less relevant than the art cited in the '182 application (i.e., the irrelevant Bowers reference), the most reasonable inference is that the examiner not only was unaware of the many years of adverse decisions in the '182 application, but also that he did not consider them. Therefore, even if the MPEP is relied upon to weigh Parallax's conduct, Parallax had a duty to

12

disclose not only the existence of the '182 application but also the prior art and adverse decisions contained therein. *McKesson*, 487 F.3d at 924; *Li Second Family*, 231 F.3d at 1381. Parallax did not do so, and this is the only reason that the '232 application issued as a patent. [4[th] CC, paras 62-65, 74-76, 78, 83]

The importance of Parallax's duty is further highlighted by Parallax's own actions during prosecution of the '232 patent claims. Specifically, during prosecution, Parallax amended the '232 application claims to have a scope commensurate with the scope of the '182 claims under rejection. [4[th] CC, paras 57-61] Once Parallax amended the '232 claims to mirror the rejected '182 claims, Parallax's duty to advise the '232 examiner of the status of the '182 application only strengthened. *See Li Second Family*, 231 F.3d at 1380 (affirming inequitable conduct based in part on the district court's conclusion regarding materiality of a withheld adverse decision in a related application having similar patent claims). Not only would the withheld adverse decisions and prior art from the '182 application be relevant to patentability, but the knowledge of the '182 application itself should have necessitated a double patenting rejection. [4[th] CC, para 83]; *See Dayco Products*, 329 F.3d at 1365 (Federal Circuit has held that a copending application may be "highly material" to the prosecution of an application where the copending application could have served as the basis of a double patenting rejection). Instead of complying with its duty, however, Parallax remained silent and argued that its claims were patentable over the irrelevant Bowers reference and subsequently obtained issuance of the '085 patent. [4[th] CC, paras 62-65, 74, 78]

In a scattershot conclusion of its arguments, Parallax next argues that Incstores failed to explain how the MyKarateStore.com reference was not cumulative of information the examiner reviewed in the '232 application. As the specific example of a supposed failure to perform this comparison, Parallax makes a bare allegation, with no supporting explanation, about U.S. Pat. No. 6,588,167. [MTD at 12] According to Parallax, "During examination of the '232 application, the examiner *made reference to*

1  U.S. Pat. No. 6,588,167 titled "Reversible Dual-Color Floor Pad," which describes a

2  dual colored mat." (emphasis added) [*Id.*]

3       As a first matter, Incstores has no idea what Parallax means by "made reference

4  to." It is entirely unsupported, unexplained, and beyond the scope of the pleadings. For

5  this reason alone, the argument should be rejected, but Incstores addresses the

6  argument below for thoroughness and out of an abundance of caution.

7       Although Parallax claims that the '232 application examiner "made reference to"

8  U.S. Pat. No. 6,588,167, the *only reference* cited in any Office Action by the examiner

9  of the '232 application was the Bowers reference. *See* Non-Final Office Action, dated

10  July 14, 2015 (claims rejected for obviousness over Bowers alone), and Final Office

11  Action, dated October 21, 2015 (claim rejections withdrawn) [Electronic copy of '232

12  file history containing the parties' joint designations for claim construction, submitted

13  on May 8, 2017] In fact, it was after Parallax argued that Bowers did not teach

14  "reversibility" in the prior art that the '232 application was allowed to issue as the '085

15  patent. [4th CC, para 78]

16       Confirming that the '232 examiner did not consider better prior art, the Notice of

17  Allowance for the '085 patent specifically explained that Bowers was the closest

18  reference considered. According to the Notice of allowance:

19  **4.**   The closest prior art of Bowers (WO 03/000994) teaches tiles, however, fails to

20  teach a reversible floor matting comprising: a body with an interlocking peripheral wall

21  having a plurality of teeth and a plurality of receiving slots, the body comprising a first

22  layer and a second layer that have the same coefficient of thermal expansion; wherein

23  the first layer has a first color and the second layer has a second color that is different

24  than the first color; and wherein the first layer and second layer are bound together to

25  form an undulating inner boundary therebetween.

26

27

28

**5.** The other references of record do not teach or suggest the combined limitations not taught by Bowers (WO 03/000994).

Notice of Allowance issued in the '232 application, dated January 21, 2016, pages 2-3 ("Reasons for Allowance") [Electronic copy of '232 file history containing the parties' joint designations for claim construction, submitted on May 8, 2017]

Confirming the irrelevance of Bowers, Parallax's own arguments are instructive:

Amended claim 1 explicitly states that the floor matting is reversible. Bowers fails to disclose this limitation. The mat in Bowers has a flat upper surface (*e.g.*, see impact absorbing upper surface 14 in Fig. 2a) and a legged bottom surface (*e.g.*, see the plurality of upper surface supports 20 in Fig. 1). The plurality of legs is designed to contact the floor (*e.g.*, sub-base 12) "so as to leave void areas underneath the upper surface which are not filled by resilient composition." See Bowers, top of page 4. Indeed, Bower's mat is designed to be used one-sided only. Thus, Bowers fails to disclose a reversible floor matting.

Moreover, there is no motivation to modify Bower's mat to be reversible. In Bowers, the

Amendment filed in the '232 application, dated October 14, 2015, at 6. [Electronic copy of '232 file history containing the parties' joint designations for claim construction, submitted on May 8, 2017]

In short, Parallax has put forth nothing, other than an ambiguous statement in attorney argument, demonstrating that any reference other than the Bowers reference was substantively evaluated by the examiner of the '232 application in determining patentability. Moreover, the decision granting reexamination of the '085 patent also supports that U.S. Pat. No. 6,588,167 was not actually considered. *See* Decision on Request for Reexamination of the '085 Patent, dated February 3, 2017. [Ex. 11 to Incstores' Motion for Summary Judgment of Invalidity of the '764 and '085 Patents] Reexaminations are only granted when substantial new questions of patentability are presented. 35 U.S.C. § 303. In other words, reexaminations are not granted over prior art which is cumulative to art already considered by the Patent Office. Thus, given the similarity of the Mykaratestore.com reference to the EVAHWCG reference [4th CC,

1  para 76-77], if U.S. Pat. No. 6,588,167 was considered by the '232 examiner and was

2  cumulative (to the Mykaratestore.com reference), the '085 reexamination simply would

3  not have been granted on the basis of the EVAHWCG reference. In short, no specific

4  pleading of the noncumulative nature of the Mykaratestore.com reference, as compared

5  to any reference other than Bowers, should be necessary.[8] Incstores has included such

6  factual pleadings in its counterclaims and affirmative defenses [4th CC, para 76-77 and

7  78 (Mr. Andelin materially misrepresenting to the patent examiner that reversibility

8  was not known in the prior art)], thus fulfilling its requirements under Rule 9(b).

9      Parallax's treatment of the "nine other url's that were complete" [MTD at 13] is

10  similar to its treatment of U.S. Pat. No. 6,588,167, and Incstores' reply is the same.

11  Parallax only explains its "argument" in connection with a document referenced by a

12  citation to Dkt. 56-2.[9] However, the document accessible "as" Dkt. 56-2 is an example

13  of one of the blurry, illegible disclosures that Parallax originally made in the '182

14  patent application (but never in the '232 application), as discussed in detail above. In

15  other words, according to the Office Action dated May 17, 2006, the document

16  accessible "as" Dkt. 56-2 was never considered by the Patent Office. [4th CC, para 69-

17  70] Whether a new clear copy of Dkt. 56-2 was ever submitted in the '182 patent

18  application is not apparent (nor even asserted by Parallax). [4th CC, para 70] It is a fact,

19  however, that the document was never disclosed in the '232 application. [4th CC, para

20  74] And, the '232 application itself provides no indication whatsoever that the "urls"

21  (whether pertaining to Dkt. 56-2, or otherwise) were ever considered in that

22  application. Again, the only reference cited in the '232 application was Bowers, and if

23  _____

24  [8] Although not needed, the Mykaratestore.com reference is more conspicuously relevant (i.e., more explicit) than U.S. Pat. No. 6,588,167. Specifically, when viewed in color, the Mykaratestore.com reference immediately reveals the dual color, reversible nature of the prior art publication, with no study of the other reference details being necessary. *See, e.g., McKesson*, 487 F.3d at 909 (acknowledging the district court's findings that a reference was not cumulative, even though it contained similar teachings, because it was more explicit).

27  [9] Parallax makes several arguments with respect to Dkt. 56-2 at pages 12-13 of its motion. [MTD at 12-13] However, since this reference (available at Dkt. 56-2) was expressly identified as not considered in the '232 application [4th CC, para 69-77], no weight should be given to these arguments.

Dkt. 56-2 were cumulative to the Mykaratestore.com reference, then the USPTO would not have granted the reexamination of the '085 patent over EVAHWCG (see arguments above). In sum, just as with the argument pertaining to U.S. Pat. No. 6,588,167, no specific pleading of the noncumulative nature of the Mykaratestore.com reference, as compared to any reference other than Bowers, should be necessary. Incstores need only plead a plausible case of inequitable conduct to withstand a motion to dismiss. *Twombly*, 550 U.S. at 570. And, again, Incstores has pleaded a compelling comparison of the actual art considered by the examiner to the art withheld from the examiner [4th CC, para 69-78 and Exhibit 1 thereto], as discussed more thoroughly above. Simply put, Parallax simultaneously argued that "reversibility" was not taught in the prior art (in order to gain allowance of the '085 patent) while simultaneously withholding the Mykaratestore.com reference from the Patent Office (even though legible copies were expressly requested). [4th CC, paras 70, 78] These facts more than meet the standard for pleading a plausible case of inequitable conduct.

**B.    Incstores Has Pleaded a Substantial Amount of Facts and Has Made the Required Showing of Particularity under Rule 9(b) and Exergen to At Least Plausibly Show that Parallax Withheld Material Prior Art and Prior Art Rejections in the '182 Application from the Examiner of the '764 Patent, With an Intent to Deceive the Patent Office**

Seeking to dismiss Incstores' allegations that U.S. Patent No. D543,764 ("the '764 patent") was procured inequitably, Parallax argues that Incstores failed to meet the "what" and "where" requirements of *Exergen*. [MTD at 10] Specifically, Parallax contends that Incstores failed to plead:

> which claim limitations (*e.g.*, design features) of the '764 patent that the withheld references are relevant to, and where in those references the material information is found. For example, the allegations failed to state whether "the other prior art of record" in the '182 application showed similar design features as the '764 patent.

[*Id.*]

Parallax also alleges that Incstores failed to plead:

1

2
*why* the allegedly withheld information is material and not cumulative…[T]he
pleadings fail to explain why the D'Luzansky patent and other prior art of record

3
in the '182 application are not cumulative of the prior art considered by the

4
examiner of the application for the '764 patent.

5
[MTD at 11]

6
    Finally, Parallax alleges that Incstores has failed to adequately plead intent, citing

7
*Therasense* for the proposition that, "[p]roving that the applicant knew of a reference,

8
should have known of its materiality, and decided not to submit it to the PTO does not

9
prove specific intent to deceive." [MTD at 11-12] However, all of Parallax's

10
contentions are once again easily proven wrong simply by reading Incstores' pleadings.

11
    According to Incstores' counterclaims, the patent application which matured into

12
the '764 patent was pending when an Office Action issued in the related '182

13
application on May 17, 2006. [4th CC, para 86] As pleaded by Incstores, counsel for

14
Parallax, Robert Fish[10] was prosecuting both the '764 patent and the '182 patent

15
application, therefore:

16

17
Mr. Fish was aware of the May 17, 2006 Office Action. The May 17, 2006
Office Action cited numerous prior art references against the '182 patent
application claims which were not discovered by the examiner examining the

18
application for the '764 patent. The May 17, 2006 Office Action was specifically
addressed and mailed to Mr. Fish.

19

20
[4th CC, para 86] In other words, Incstores has pleaded with particularity that a specific

21
individual, for whom a duty to disclose was applicable, was made aware of a prior art

22
reference through the issuance of an Office Action in a related application. S*ee* 37

23
C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent

24
application has a duty of candor and good faith in dealing with the Office, which

25
includes a duty to disclose to the Office all information known to that individual to be

26
material to patentability as defined in this section.")

27

28
[10] Robert Fish is a partner in the firm in which Mr. Andelin is an associate. Both are
listed as counsel of record in the '182, '232, and '076 patent applications. [4th CC, para 82, 86]

INCSTORES' OPPOSITION TO PARALLAX'S MOTION TO DISMISS AND STRIKE

1      Next, Incstores' pleadings explain:

> The '764 patent, generally speaking, covers a square floor mat with interlocking teeth disposed about its periphery. None of the prior art found by the examiner that issued the '764 patent contained teachings of such floor mats. Conversely, the May 17, 2006 Office Action issued in the '182 patent application, which was addressed to Mr. Fish, included citations to prior art documents which disclosed floor mats materially similar to those claimed in the '764 patent. For example, U.S. Patent No. 5,052,158, issued in the name of D'Luzansky, teaches a floor mat which is square and which includes interlocking teeth disposed about its periphery. The '158 D'Luzansky patent issued and was published on October 1, 1991, before the effective filing date of the application for the '764 patent. Therefore, the '158 patent is considered prior art to the '764 patent.

[4th CC, para 87]

As can be seen, contrary to Parallax's assertions otherwise, Incstores' pleadings explain the claim of the '764 design patent (as "a square floor mat with interlocking teeth disposed about its periphery." [*Id.*]) Next, Incstores' pleadings explain that during examination of the '764 patent, the examiner did not uncover any prior art disclosing similar floor mats ("None of the prior art found by the examiner that issued the '764 patent contained teachings of such floor mats." [*Id.*]). Progressing further, Incstores' pleadings subsequently explain that the D'Luzanksy reference was cited in the '182 application Office Action and that, unlike the prior art considered by the '764 patent examiner, the D'Luzansky reference did indeed teach, "a floor mat which is square and which includes interlocking teeth disposed about its periphery." [*Id.*] Given that the examiner had no prior art related to similar floor mats before it during prosecution, it is logical to presume that an examiner would consider a reference which teaches the claimed "square floor mat" with "interlocking teeth" features material. *Therasense*, 649 F.3d at 1291 (prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art). Rather than contesting the materiality of D'Luzansky specifically, Parallax instead inexplicably pretends that Incstores never made the allegations that it clearly has.

      Of course, Incstores' pleadings also specify that the D'Luzansky reference

was never disclosed to the '764 patent examiner. [4th CC, para 87] In fact, Parallax did not file any information disclosure statement in the '764 patent at all. [4th CC, para 85, 87]. Instead, despite being on notice of the D'Luzansky reference, and despite having the opportunity since the '764 patent application was still pending, "Mr. Fish paid the issue fee for the '764 patent on September 15, 2006, and the patent was subsequently improperly issued." [4th CC, para 88]

While Parallax claims that Incstores has inadequately pleaded intent, the Federal Circuit has recognized that direct evidence of intent is rarely available. Therefore, specific intent to deceive may be inferred from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290; *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007). Here, where Mr. Fish was prosecuting both the '764 and '182 applications (both of which pertain to interlocking floor mats), and the D'Luzansky reference was cited in a rejection in an Office Action in the '182 patent application [4th CC, para 86], Mr. Fish was, at that time, made expressly aware of the materiality of the D'Luzanksy reference. In other words, Mr. Fish *knew* of the reference and *knew* of its materiality. [4th CC, para 87-88] This actual knowledge, as pleaded by Incstores, is quantitatively more than the "*should have* known" test rejected as insufficient by *Therasense*. Further supporting Incstores' contentions, neither Mr. Fish (nor Parallax through any other counsel) filed any IDS whatsoever in the application which matured into the '764 patent [4th CC, para 85], further underscoring Parallax's shirking of its duty of disclosure. Viewed also in the context of Parallax's refusal to comply with the Patent Office's express request to submit a legible copy of the MyKarateStore.com reference in the '182 application (discussed in detail *supra*), this pattern of nondisclosure is further support that Incstores has pleaded a plausible case of inequitable conduct for the '764 patent. *See Apotex Inc. v. UCB, Inc.* 763 F.3d 1354, 1359 (Fed. Cir. 2014) (affirming inequitable conduct holding based on "pattern of lack of candor").

/ / /

---

20

**C.    Parallax's Failure to Memorialize Interviews with the Examiner is Yet Another Reason Incstores Has Made a Plausible Showing of Parallax's Inequitable Conduct**

Under the section heading "Fifth Deficient Basis", Parallax explains its basis for seeking to dismiss what Parallax apparently perceives is an independent allegation of inequitable conduct. However, Incstores' allegations pertaining to Parallax's failure to memorialize numerous interviews with examiners are not intended to stand alone as an independent basis for finding that the '764 or '085 patents were inequitably procured. Instead, Incstores pleaded these facts in general support of the "core" allegations that 1) Parallax withheld the mykaratestore.com reference, despite the USPTO's express request that Parallax submit a legible copy (while simultaneously arguing that "reversibility" was not taught in the prior art) [4th CC, para 69-78]; 2) that Parallax failed to disclose the adverse decisions (and underlying prior art) in the '182 application, even after it amended the '232 application claims to "match" the '182 patent claims [4th CC, para 64-65]; and 3) that Parallax withheld material prior art used to reject the '182 application from the examiner which examined the '764 patent. [4th CC, para 86-88] Specifically, since Parallax failed to memorialize these interviews, Parallax cannot claim to have disclosed the material information to the examiner during the interviews with the effect of exonerating itself of Incstores' allegations. *See, e.g., Li Second Family*, 231 F.3d at 1379 (holding that purported disclosures to the examiner in interviews that were not memorialized were not credible for avoiding inequitable conduct). The failure to memorialize any of the interviews also illustrates Parallax's blatant disregard for "following the rules" which the Court can consider when evaluating Incstores' allegations as a whole. *See* 37 C.F.R. 1.2 – "Business to be transacted in writing" (stating in part: "The action of the U.S. Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews."); [4th CC, para 79]

**D.   Incstores Should Be Allowed to Amend the Counterclaim (and Affirmative Defense) if the Court for Some Reason Grants Parallax's Motions to Dismiss and Strike**

In its final arguments, Parallax claims that this is Incstores' second attempt to plead inequitable conduct and that therefore Incstores should be denied leave to amend, if Incstores' counterclaims or affirmative defenses are dismissed or stricken. [MTD at 15] However, this is not an accurate picture. Although Incstores filed an amended counterclaim (and affirmative defense), this was a result of a pre-motion conference which was intended to resolve this matter without Court intervention. For example, Incstores' original inequitable conduct pleadings did not name specific patent practitioners responsible for the inequitable conduct. To appease Parallax, Incstores agreed to amend the pleadings in accordance with guidance that Parallax provided in various emails. The result was the stipulation filed with the Court as Dkt. No. 56 ("[T]he Parties have met and conferred to resolve issues regarding the sufficiency of Incstores' pleading with respect to inequitable conduct.") (Dkt. No. 56). Parallax has since moved the marker, however, and now objects to Incstores' pleadings for different reasons. In short, Incstores' counterclaim and affirmative defense should not be treated as if they were once dismissed or stricken by this Court, because they were not. Therefore, if the Court finds Incstores' pleadings inadequate in any respect, Incstores should be provided an opportunity to re-plead the matters.

## IV.   CONCLUSION

Parallax's motions to dismiss and strike Incstores' fourth counterclaim and seventh affirmative defense should be denied. In the alternative, Incstores should be granted leave to file an amended counterclaim and affirmative defense.

1

Respectfully submitted this 29th day of May 2017.

2

3                                        PEQUIGNOT + MYERS LLC

4

5                              By:   /s/ Sarah L. Woodson
                                     Sarah L. Woodson
6                                    *Attorney for Defendant, Incstores LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INCSTORES' OPPOSITION TO PARALLAX'S MOTION TO DISMISS AND STRIKE

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true and correct copy of INCSTORES'

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FOURTH

COUNTERCLAIM AND MOTION TO STRIKE THE SEVENTH AFFIRMATIVE

DEFENSE OF INEQUITABLE CONDUCT was filed via the Court's CM/ECF

system, thereby effectuating service upon all counsel of record via electronic means.


Dated:  May 29, 2017                    /s/ Sarah L. Woodson

                                        Sarah L. Woodson
                                        *Attorney for Defendant, Incstores LLC*